## O. Max Leach, Executor under the will of Sidney Louis Hyatt, deceased

### v.

## Louis S. Hyatt

Record No. 920271

November 6, 1992

Present: All the Justices

*Dennis I. Belcher (Amy T. Holt; McGuire, Woods, Battle & Boothe,* on brief), for appellant.

No brief or argument on behalf of appellee, Louis S. Hyatt.

JUSTICE KEENAN delivered the opinion of the Court.

In this appeal, we consider the validity of a clause in a will which gives the executor absolute discretion to dispose of the testator's property, provided that he does not use it to enlarge his own bequest under the will.

Louis S. Hyatt (the nephew) filed a bill of complaint challenging the will of his uncle, Sidney Louis Hyatt (Hyatt), who was unmarried and had no children at the time of his death. The nephew alleged that Hyatt did not fully dispose of property listed in Clause II of his will, and that the remainder of such property should pass according to the laws of intestate succession. The executor of the estate, O. Max Leach (Leach), filed a motion for summary judgment asserting, *inter alia,* that Clause II was a valid disposition.

The stated objective of Clause II was to dispose of assets worth $600,000 in order to completely utilize the unified credit exemption allowed by the Internal Revenue Code.[1] Clause II contained eight specific bequests of money and property to named individuals, totalling approximately $260,000. The second part of Clause II, which gives rise to this dispute, reads in material part:

---

[1] Pursuant to I.R.C. § 2010 (1990), the first $600,000 of a decedent's property passes free of federal estate tax.

In the absence of full and complete instructions from me to my Executor or Executrix, the persons to receive something under this Clause II and what each is to receive shall be appointed by my Executor or Executrix in his or her sole and absolute discretion, consistent with the stated objective of this Clause II, but this limited power of appointment shall not be used to increase or enlarge any bequest I make to any persons who serve as my Executor or Executrix, by this will or any codicil to it.

The trial court held that this power of appointment was unenforceable because it was vague, overbroad and did not limit the executor's discretion.

The issue presented here, whether a limited power of appointment is valid for noncharitable purposes when it does not designate a beneficiary class, is a question of first impression for this Court. Initially, we observe that any power of appointment constitutes a delegation of authority to a named individual, enabling that person to dispose of an interest which is vested in another. *Davis v. Kendall*, 130 Va. 175, 204, 107 S.E. 751, 760 (1921). The law refers to the creator of a power of appointment as the "donor," to the owner of the power as the "donee," and to the beneficiary as the "appointee." *Holzbach v. United Va. Bank*, 216 Va. 482, 484, 219 S.E.2d 868, 870 (1975). Under a power of appointment, title to the property remains with the donor until the donee exercises the power. At that time, title passes through the donee to his appointee. *Id.*

The general rule is that a donor may impose particular conditions and requirements upon a power of appointment, as well as upon the manner in which it must be exercised. *Id.* at 484, 219 S.E.2d at 871. The different types of powers of appointment reflect the varying degrees of control placed by the donor on the disposition of the property. One such type is the special power, which arises when the donee is given the power to dispose of property among a certain class designated by the donor. *See Daniel v. Brown*, 156 Va. 563, 568, 159 S.E. 209, 210 (1931). Another recognized power of appointment is the general power, under which the donee may dispose of the property to anyone including himself or his creditors. *Shriners Hosp. v. Citizens Bank*, 198 Va. 130, 134, 92 S.E.2d 503, 508 (1956).

The limited power of appointment, the type at issue here, is neither as broad as a general power nor as circumscribed as a special power. Rather, under it, the executor may not appoint the property to himself or his creditors, but he is given complete discretion to appoint it to anyone else.[2] *See* Restatement (Second) of Property § 11.4 cmt. b (1986). A major argument advanced against upholding this type of power is that, in not designating a specific class of beneficiaries, the limited power manifests uncertainty or indefiniteness in the donor's intent. *See Blankenship v. Blankenship*, 276 Ky. 707, 712, 124 S.W.2d 1060, 1062 (1939). We find this argument unpersuasive when, as here, the donor's intent to grant a limited power of appointment is unambiguous.

Powers of appointment must be construed in accordance with the intention of the donor. *Holzbach*, 216 Va. at 486, 219 S.E.2d at 871-72; *Davis*, 130 Va. at 198, 107 S.E. at 758. Thus, while the will must reflect with certainty the donor's intent to create a power, the donee's exercise of the power is valid as long as it does not exceed the authority given the donee in the grant of power. *In re Lidston's Estate*, 32 Wash. 2d 408, 422, 202 P.2d 259, 267 (1949).

In *Holzbach*, this Court explained that powers of appointment constitute a recognition of a donor's right to dispose of his property as he sees fit through the selection of a conduit, his donee. 216 Va. at 486, 219 S.E.2d at 872. Although the power recognized in *Holzbach* was general, rather than limited, we find that the Court's explanation, set forth above, is equally applicable to limited powers of appointment. This finding is based on the underlying principle that a donee of a power is not required to have a beneficial interest in the subject of his power, in order to validly exercise that power. *In re Estate of Schaaf*, 19 Ill. App. 3d 662, 664, 312 N.E.2d 348, 350 (1974). Further, to hold otherwise here would automatically invalidate special powers of appointment, which we have already recognized. *See Daniel*, 156 Va. at 568, 159 S.E. at 210.

This approach, upholding limited powers of appointment where the donor's intent to establish the power is unambiguously expressed, has been adopted by a minority of courts that have considered the issue. *In re Estate of Schaaf*, 19 Ill. App. 3d at 666, 312 N.E.2d at 351; *United States v. Baldwin*, 283 Md. 586, 590, 391 A.2d 844, 846 (1978); *In re Dulles's Estate*, 218 Pa. 162, 165, 67 A.

---

[2] The limited power of appointment also is referred to as a "non-general" power because the donee may not appoint the property to himself. Restatement (Second) of Property § 11.4 (1986).

49, 49 (1907); *Wills v. Union Sav. & Trust Co.*, 69 Ohio St. 2d 382, 386, 433 N.E.2d 152, 155 (1982). The Restatement (Second) of Property § 12.1 cmt. e (1986) is in accord with this position supporting the validity of limited powers of appointment held by executors. This view represents a departure from the earlier position taken in the Restatement of Property § 323 cmt. e (1944) opposing the use of such powers.

Courts that have invalidated limited powers of appointment generally have based their decision on the grounds that such powers lack definite beneficiaries. *District of Columbia v. Adams*, 57 F. Supp. 946, 947 (D.C. 1944); *In re Ralston's Estate*, 1 Cal. 2d 724, 727, 37 P.2d 76, 78 (1934); *Estate of Stewart v. Caldwell*, 271 So. 2d 754, 757 (Fla. 1973); *Egleston v. Trust Co.*, 147 Ga. 313, 314, 93 S.E. 878, 879 (1917); *McKee v. Hedges*, 297 S.W.2d 45, 48 (Ky. 1957); *Davison v. Wyman*, 214 Mass. 192, 195, 100 N.E. 1105, 1107 (1913); *Tunis v. Dole*, 97 N.H. 420, 424, 89 A.2d 760, 763 (1952); *In re Sheifer's Estate*, 178 Misc. 340, 342, 34 N.Y.S.2d 302, 304 (1942). In so holding, those courts have focused on whether the testator adequately designated a class of beneficiaries, rather than on whether he intended that his donee have a limited power of appointment. *Id.*

We believe that the minority approach, in examining whether the donor unambiguously expressed an intent to create a limited power of appointment, provides the better analytic framework for ascertaining the donor's intended disposition of his property. Applying this approach to the case before us, we find that the language of Clause II demonstrates Hyatt's clear intent to give Leach a limited power of appointment over a fixed amount of his property. Thus, we hold that Hyatt validly disposed of the balance of the property that was the subject of Clause II. Accordingly, we will reverse the decision of the trial court and enter judgment in favor of Leach.

*Reversed and final judgment.*