# Richmond

MARGARET ELWARD LAWLESS, ET ALS. V. EDWARD KIRWAN
LAWLESS, ET ALS.

April 26, 1948.

Record No. 3310.

Present, All the Justices.

512

The opinion states the case.

*Jas. G. Martin & Sons* and *H. Lawrence Bullock*, for the appellants.

*Venable, Miller, Parsons & Kyle* and *Willcox, Cooke & Willcox*, for the appellees.

SPRATLEY, J., delivered the opinion of the court.

Valentine Browne Lawless, a soldier, was killed in action October 16, 1944. On December 15, 1945, his last will and testament was admitted to probate in the Corporation

Court of the city of Norfolk. The will, wholly written in the handwriting of the testator, reads as follows:

"Norfolk, Va.

"November 13, 1941.

"I, Valentine Browne Lawless (V. B. Lawless), do hereby make, declare and publish this my last will and testament, drawn in my own hand.

"1. My most valued possession, the Cloncurry gold seal ring, given me by my father, I give to Joseph Thomas Lawless, son of my brother, deceased, and who is my nephew; the seal ring to be given to him upon his reaching his twenty-first (21st) birthday, and to be held for him until that time in a safe deposit box at one of the local banks, the rental expense of which to be prepaid from any cash I may have in my name at the time of my death.

"2. Any title I may have in any real estate and any title I may have in furniture (other than my Philco Radio Phonograph and records), I bequeath, share and share alike, to my surviving brothers and sister, with the same request being passed on to them that my father made in his will, i. e., that if practicable, to keep the furniture intact.

"3. Any boats or boating equipment which I may own at my death, I request be sold and the cash be given my brother, Kirwan, whom I will later name Executor of this will and testament, *this cash to be used as I shall later request.*

"4. Any automobile which I may have at the time of my death, I request be sold, and *that the cash be also turned over to my brother, Kirwan for purposes herein written later on.*

"5. My insurance policy now listing my deceased father as beneficiary, I request be paid to my brother, Kirwan.

"6. To a man whom I consider a friend and know to be kind and thoughtful, I bequeath my Philco Radio and Phonograph and records, the man is Geo. Manine Hughes.

"7. *All my other possessions, small or inconsequential as they are, I leave to my brother Kirwan to do with as he may see fit, with one exception.* My black rosary, with

large oblong beads (given me for reverence and fidelity at the altar), somewhere in my possession, this I request be put in good repair at some jewelers, and to be sent to one of the finest women I've ever known, and one whom I shall always respect and admire, I refer to Sister Ariana, who taught me at Sacred Heart School some years ago.

"I appoint my brother Edward Kirwan Lawless Executor of this will and request that no appraisement be made. I request that no surety be required of the appointed executor, and that *no report be made of his disposition of my possessions, either cash possessions or other possessions. I believe neither to be necessary as I know my brother.*

"I request that the cash on hand at my death and resulting cash from sale of my possessions be applied to my funeral expenses and that *the balance be given to Kirwan on a special purpose.*

"Published and declared as and for my last will.

> (Signed) VALENTINE BROWNE LAWLESS
> (V. B. Lawless)." (Italics added.)

The testator left no descendants and his parents were dead. His heirs-at-law were Margaret E. Lawless, a sister, Gregory B. Lawless and Edward Kirwan Lawless, brothers, and five nephews and one niece, the infant children of a deceased brother, Joseph T. Lawless, Jr.

Edward Kirwan Lawless, the executor named in the will, declining to qualify as such, Margaret Elward Lawless, was appointed and duly qualified as administratrix c. t. a. of the estate of her deceased brother.

In June, 1947, Margaret Elward Lawless, adminstratrix c. t. a., instituted this proceeding in chancery against all of the heirs-at-law of the testator, praying for a construction of the will of her decedent and advice as to the disposal of his assets.

The bill of complaint alleged that the testator had cash in hand amounting to $1,796.04 at his death and that since his death she had collected from the United States arrears in his army pay amounting to $1,814.46. It averred that the "special purpose" mentioned in the will was indefinite

and unknown, but that a letter, in the handwriting of the testator, bearing the same date as the will and addressed to Edward Kirwan Lawless disclosed his intention; that this letter was merely in the nature of an instruction to Kirwan Lawless as to the disposition of the money mentioned in the will or a request to so use the money, and was not intended to be a part of the will or a codicil thereto; that Kirwan Lawless had no intention of complying with the instructions of the letter, claiming that he was personally entitled to the money directed to be used for a "special purpose;" and that Gregory Lawless contended that the attempted trust was null and void because of the failure of the "special purpose" mentioned in the will, and the money set aside for such purpose should be paid to the heirs-at-law of the testator.

The infant defendants answered the bill by their guardian *ad litem*, duly appointed.

Edward Kirwan Lawless answered, admitting that the letter referred to in the will was written by his brother; but averred that despite its instructions it was illegally and improperly opened and read by the administratrix before it was turned over to him; and that he considered the contents thereof a private matter and subject to the dictates of his conscience. He denied that there had been a failure of the "special purpose" mentioned in the will. He prayed that all funds in the hands of the administratrix, after payment of all debts due by the estate, be paid to him, and that all personal property, other than that specifically left to others, be turned over to him.

The case was heard *ore tenus*. At the trial all of the parties, both adults and infants, except Kirwan Lawless, demanded that the letter of the testator be produced in evidence. Kirwan objected, and the court sustained his objection. However, a copy of the letter was filed as a part of the record so that this court could pass upon the questions involved.

The letter of the testator was not probated nor offered

for probate as a will or codicil thereto. Wholly written in the handwriting of the testator, it reads as follows:

"Nov. 13-'41.

"Dear Kirwan:

"Please be executor of my will and remember me as one who thought a lot of you and wishes you success which I believe of & hope for you.

"I want you to take whatever cash no matter how much left over after my death & funeral & marker, and make a contract with a florist, to send one rose each Saturday morning before ten A. M. to the residence of a girl whom I have loved very dearly for over three years at this writing, and shall continue to love for the duration of my life. This is not a sentimental, love sick statement. I know the girl much better than any one realizes and she is one of the finest persons it has ever been my privilege to be associated with and I want the *one perfect rose* of any color (to vary) to be sent to her because I have wanted so much to give her some pleasure while I lived but not being the type of person who is able to give any one pleasure by company, & (company, dates, etc.,) would be necessary or she would not accept any other presents which I've wanted so much to give to her, because of these reasons, I have to request that the flower be sent to her and possibly she may sometimes wear it to church on Sunday, or, at least receive some enjoyment out of it. Please do this with the understanding that the bill & contract be paid for in advance and that no name *ever* be divulged as to the sender.

"This is the most important part. Talk to only one *person* make only one contract and with that person, and make part *of the agreement* that no name be divulged *ever*, on request of the girl, or any one else.

"I love her very much, Kirwan, and would like to be the type of person that could make her love me and marry me and be able to support & provide her with those things which it is such a pleasure to give to one you love. But, as I'm not a personality which is likable and as I do not

have mental qualifications requisite of one who is likely to be successful socially or financially, I must make this request.

"*Mention this letter to no one, not a single soul. My* idea is to furnish the girl with the pleasure of receiving a rose, not have her think a lot of me because I sent it to her.

"I've written a lot of letters to her in the last three years, some of them have been destroyed, most all of them, but there are some of them left in a brown envelope in my set of files on the closet shelf. Please see that those are sent her and that she be aware that they are personal and are to be read, if at all, in private. They are only my expressions of reactions to what has gone on in our association in business & love letters in general. (She works for Southern Steve. Corp.) Her name is Mildred Fitz Patrick and she is one of the most beautiful girls in character & looks, I've ever known. Thanks and pray for me.

VAL"

On the back of the letter appears, in the handwriting of the testator, the following legend:

"To E. K. LAWLESS:—To be read by him only, and to be read by him in private. I ask that all details of the above request be carried out literally, that he be sure to read the letter while alone.

"From: Val Lawless."

The trial court, upon the bill of complaint, the will filed as an exhibit therewith, the answers of all the defendants, together with the general replication, adjudged and decreed "that Edward Kirwan Lawless, as legatee under the will of Valentine Browne Lawless, individually and with no trust attached, is vested with title to all funds realized from the estate after paying all expenses of administration, and to all other property left by Valentine Browne Lawless except" certain specified property mentioned in paragraphs 2, 6 and 7 of the will.

From this decree Margaret Elward Lawless, Gregory B. Lawless, and the infant children of the deceased brother of the testator have appealed.

The appellants contend that the trial court erred in refusing to allow the letter of the testator in evidence, and that whether the will be construed with the aid of the letter or without its aid, the court erred in its conclusion.

We will consider first the admissibility of the letter as evidence.

In jurisdictions where a document extrinsic to a will is allowed to be incorporated therein, three things are essential to such incorporation. This is known as the doctrine of incorporation by reference. *Bryan's Appeal*, 77 Conn. 240, 58 A. 748, 107 Am. St. Rep. 34, 68 L. R. A. 353, 1 Ann. Cas. 393. See full and exhaustive annotation "Incorporation of Extrinsic Document into Will," 68 L. R. A. page 353, *et seq.*, and comment note,—"Incorporation of Extrinsic Writings in Will by Reference," 144 A. L. R. page 714.

The limitations and conditions attendant upon the application of this doctrine are concisely stated in Harrison on Wills and Administration, Vol. 1, section 102 (7), page 190, and approved in *Triplett* v. *Triplett*, 161 Va. 906, 921, 172 S. E. 162, as follows:

"First, It (the extrinsic document) must be a paper in actual existence at the date of the execution of the will. Second, It must appear from the face of the will that it is a paper in actual existence; and Third, It must be identified and described with reasonable certainty in the will."

The reasons for the limitations are sound. Otherwise the wise provisions of the law relating to the making and execution of wills might be nullified. If the existing document sought to be incorporated was not in actual existence at the time of the execution of the will, then a decedent might write a will without complying with the statutory requirements relating to wills. If the extrinsic document is not referred to in the will as in existence, there can be no certainty that it is the paper referred to. If it is not sufficiently described in the will then parol evidence will be required to establish it as a part of the will. This is forbidden by statute.

■ While, under certain circumstances and conditions, extrinsic evidence may be admissible to explain ambiguous language in a will, or to describe a legatee not precisely named or described, such evidence cannot be admitted for the purpose of incorporating in a will either the nature of a purpose or the name of a beneficiary undisclosed in the will itself, in the absence of the three essential things required under the doctrine of incorporation by reference.

■ In the present case not a single one of the required conditions has been complied with. There is not in the language of the will any clear and explicit reference to any specific document as existing at the time the testator executed his will. In fact, there is no reference to a letter of the testator. Whatever reference there is, is to "a later request" or to purposes to be "written later on." Any letter or letters written by the testator any time after the will was executed, or any oral request made by him, would answer the reference. The reference is so vague and uncertain as to be capable of being applied to any document in particular existing at the time of the execution of the will.

The letter may have been written on the same day as the will but later in that day, or the date may have been subsequently inserted, or another letter submitted for it written at a different time and dated back. Nor was the letter of a testamentary nature as shown by the legend written on its face. It was intended only for the eyes of Kirwan Lawless. It was purely an attempt to make a personal agreement with his brother to be kept secret. It was manifestly never intended as a part of the will or as a codicil thereto. While the will, drawn by an intelligent testator, declares in both its first and last sentences that it shall be published, the letter imperatively commands that its contents be divulged to no one.

The proper decision of the case, therefore, depends upon the construction of the probated will alone. In this construction, we must, if possible, without violating well settled rules of law, give force to every word of the will.

The purpose of the law of wills is to allow the owner of property to dispose of it as he wishes. But the command of the testator must be expressed in writing and the words used must be sufficient for the purpose.

It will be noted that where the testator makes a bequest or devise in the will, he does so without any reservation whatever. In item 1, he gives his gold seal ring to his nephew; in item 2, he gives his realty and furniture to his brothers and sister; in item 5, he gives his insurance to his brother, Kirwan; in item 6, he gives his radio and records to George Hughes; and in item 7, he gives "all my other possessions, small or inconsequential as they are," to Kirwan absolutely, except his black rosary. The bequest in this item clearly did not include the cash mentioned in paragraphs 3 and 4. The "special purpose" therein mentioned was not intended for Kirwan's benefit. In item 3, the testator evidently had in mind "a later request," oral or written. In item 4, he manifestly intended the bequests therein mentioned be devoted to "purposes" to be set out "later on" in the will. Otherwise, there can be no reason why the specific property,—the boats and the automobile, or the proceeds therefrom, were not given directly to Kirwan, if the legacies were intended for his sole benefit.

Obviously the testator did not, at any time, have in mind the arrears in pay due him as a soldier of the United States. The balance mentioned in the last clause of the will refers specifically to the balance remaining from the cash on hand at the time of his death and the cash proceeds from the sale of his possessions, after payment of his funeral expenses. There was no intention to give such balance to Kirwan absolutely, because it was to be devoted to "a special purpose." The words of the will qualifying the use to which the cash of the testator was to be devoted cannot be struck out so as to make Kirwan the absolute beneficiary without violating the plain intendment of the testator. Here the testator had a special purpose in mind, a purpose which is not disclosed in the will. He simply did

not set out in the will the nature of his purpose or disclose therein the beneficiary of that purpose.

In *Sims* v. *Sims*, 94 Va. 580, 27 S. E. 436, 64 Am. St. Rep. 772, this is said:

"Where a trust is created by a will, if the beneficiary is not disclosed or cannot be discovered from the will itself, the trustee holds the devise or bequest for the benefit of the heirs or distributees of the testator. The equitable interest goes to them by way of a resulting trust."

In Harrison on Wills and Administration, Vol. 1, in section 279, this is said:

"No particular form of words are necessary to create a trust. * * *

"It is necessary however, that the entire trust shall be disclosed by the will itself. The law imperatively requires that a will be in writing, and therefore no oral trusts outside of the will can be established, except in the cases of fraud to which we have referred in another place."

We conclude that the language of the will lacks sufficient words to create a trust, because we can ascertain from the will no definite subject nor any certain or ascertainable object. We cannot supply this by incorporating in the will a letter not referred to in the will.

Because of the reasons set forth, we are of opinion that the heirs-at-law of the decedent, Valentine Browne Lawless, are entitled absolutely to the monies, directed, under items 3 and 4 of the will, and in the last disposal paragraph, to be devoted to an undetermined "special purpose," the same to be distributed in accordance with the Virginia statute of descents and distributions, Virginia Code, 1942, (Michie), section 5273.

The decree of the trial court is accordingly reversed and the cause remanded to the trial court for such further proceedings as may be necessary and proper, under and in accordance with the views herein expressed.

*Reversed and remanded.*