## Richmond

Hazel H. Holzbach v. United Virginia Bank, Etc., Et Al.

December 1, 1975.

Record No. 750267.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

*C. Jackson Simmons* (*Dunton, Simmons & Dunton,* on brief), for appellant.

*W. Scott Street, III (Woodward, Wood & Street,* on brief), *guardian ad litem* for infant appellees.

POFF, J., delivered the opinion of the court.

United Virginia Bank, Executor and Trustee under the last will and testament of Arthur Ray Hall, Deceased, filed a bill of complaint seeking advice and direction whether a power of appointment over the corpus of a marital trust created by the will of its decedent had been effectively exercised by the will of the donee of that power.

By will admitted to probate on October 9, 1964, Arthur Ray Hall (donor) established a "marital trust" with a corpus equal to "so much of my property . . . which will avail my estate of the full marital deduction permitted by the Federal Estate Tax Law which is applicable at the date of my death." The income from the corpus of the marital trust was to be paid to his wife for life. With respect to disposition of the corpus, the will provided:

> "My wife, Julia H. Hall, is hereby given as to the corpus of the marital trust existing at her death, a general power of appointment, by specific reference to the powers granted herein, in her will, in favor of her estate, or, at her election, in favor of any other party. Should she fail to so appoint as to all or any portion of such corpus, then, upon her death such unappointed corpus, shall become a part of the Residual Trust to be administered as herein after provided."

Donor's will then established a "Residual Trust" under which the corpus remaining upon the death of the *cestui que trust* was to be distributed, *per capita,* among the "issue" of donor's two brothers.

The will of Julia Henry Hall (donee) was admitted to probate on August 17, 1972. Article II provided:

> "I give and bequeath unto my beloved sister, HAZEL H. HOLZ-BACH, provided she survives me, all of my estate, be it real, personal or mixed, or in which I may have a power of appointment of whatsoever nature, kind or description, and wheresoever the same may be located, in fee simple and absolutely."

The chancellor heard the cause on the pleadings, the two wills, and an affidavit filed by the scrivener of donee's will. The affidavit stated that donee "was fully familiar with the fact that she had power

of appointment under the will of her husband and we discussed this at the time her will was prepared".

By final decree entered November 11, 1974, incorporating a letter opinion dated September 13, 1974, the chancellor held "that the general power of appointment created by the will of Arthur Ray Hall has not been exercised by the will of Julia Henry Hall" and ordered "that the corpus of the marital trust . . . be distributed as a part of the Residuary Estate of Arthur Ray Hall. . . ." [1]

On the appeal granted Hazel H. Holzbach, (Holzbach or appellant), the appellees,[2] infant beneficiaries of donor's residuary estate, appear by W. Scott Street, III, their guardian *ad litem*, while complainant, as stakeholder, stands neutral.

■ A power of appointment is a unique legal creature. It is created, never by implication or by operation of law, but only by deliberate act. The law calls its creator the "donor", its owner the "donee", and its beneficiary the "appointee". A power of appointment concerns property but is not, itself, "an absolute right of property". *Davis v. Kendall*, 130 Va. 175, 197, 107 S.E. 751, 758 (1921). *See also Commonwealth v. Carter*, 198 Va. 141, 145, 92 S.E.2d 369, 372 (1956). Title to the property concerned remains with the donor until the power has been effectively exercised by the donee, at which time title passes through the donee as a conduit to the appointee. *Shriners Hospital v. Citizens Bank*, 198 Va. 130, 92 S.E.2d 503 (1956).

■ The general rule is that a donor may impose particular conditions and requirements upon the power and the manner in which it must be exercised. "The donor may select his conduit and indicate the manner in which the power must be executed", *Browning v. Bluegrass, Etc., Co.*, 153 Va. 20, 35, 149 S.E. 497, 501 (1929), and " '. . . all the forms and conditions annexed to the exercise of a power must be strictly complied with. . . .' " *Gaskins v. Finks*, 90 Va. 384, 385, 19 S.E. 166 (1894). *See generally* 5 W. Bowe and D. Parker, *Page on the Law of Wills* § 45.12 (1962); 4A G. Thompson, *Real Property* § 2028 (Repl. Vol. 1960).

■ Holzbach contends that the general rule has been modified by Code § 64.1-50 (Repl. Vol. 1973)[3], and that under that statute,

---

[1] At the time the bill was filed, the assets of the marital trust were valued at $39,935.42 and those of the residual trust at $98,982.52.

[2] Anne Cary Hall, Susan Taliaferro Hall, James P. Hadley, Barbara Hall Michie, and Linwood Gordon Hall, Jr.

[3] "§ 64.1-50. **When execution of appointment by will valid.**—No appointment made by will, in exercise of any power, shall be valid unless the same be so exe-

noncompliance with the particular requirement donor imposed here cannot serve to defeat the exercise of the power. We do not agree. In paraphrase, the statute provides that if an exercise of a power of appointment by will is to be effective, the donee must execute his will with all of the formalities required by law, and if he complies with those formalities, the appointment will be effective even though he failed to comply with "some additional or other form of execution or solemnity" required by the donor. We hold that a donor's requirement that his donee make "specific reference" to the power is not within the intendment of Code § 64.1-50, and that noncompliance with such a requirement defeats the exercise of the power.

Citing Code § 64.1-67 (Repl. Vol. 1973)[4] and *Machir* v. *Funk*, 90 Va. 284, 18 S.E. 197 (1893), Holzbach argues that the residuary clause in donee's will effectively exercised the power. The statute provides that, by operation of law, a general testamentary power of appointment will be exercised by a general residuary clause in the donee's will, unless the donee's will manifests a contrary intent. As we construe the statute, it has no application where, as here, the donor has expressly imposed upon the exercise of the general power a special requirement of specific reference to the power created in the donor's will.

█ Having determined that noncompliance with donor's requirement defeats the appointment, we consider whether the language in donee's will constitutes compliance.

Holzbach insists that donee's intent controls this question. Pointing to donee's general reference to *all* powers and to the affidavit which indicates that she was aware of the particular power in question, Holzbach says that "it is clear that the donee intended to exercise the power of appointment in favor of her sister".

Holzbach applies the wrong test of compliance. The test is not whether donee intended to appoint but rather whether donee *manifested* her intent in the manner prescribed by donor, *i.e.*, by making

cuted that it would be valid for the disposition of the property to which the power applies, if it belonged to the testator; and every will so executed shall be a valid execution of a power of appointment by will, notwithstanding the instrument creating the power expressly require that a will made in execution of such power shall be executed with some additional or other form of execution or solemnity."

[4] "64.1-67. **Devise or bequest as execution of power to appoint.**—A devise or bequest shall extend to any real or personal estate, as the case may be, which the testator has power to appoint as he may think proper and to which it would apply if the estate were his own property, and shall operate as an execution of such power, unless a contrary intention shall appear by the will."

specific reference "in her will" to the power granted by donor's will. " 'Powers are to be construed in accordance with the intention of the donor. . . .' " *Davis* v. *Kendall, supra,* 130 Va. at 198, 107 S.E. at 758.

Donor's will, read against the background of death tax laws, indicates that his purpose was to provide for his wife during her lifetime and, thereafter, for the remaindermen he named. For the benefit of both, he wanted to avail his estate of the maximum marital deduction permitted by federal estate tax laws and regulations. To accomplish this, it was necessary to couple his wife's life estate with a general power of appointment. INT. REV. CODE § 2056(b)(5). To validate the deduction, the power of appointment must be tailored to fit the rules prescribed by the tax regulations. A donor's requirement that the power must be exercised "by specific reference to the power" does not defeat the deduction. Treas. Reg. § 20.2056(b)-5(g)(4). Donor adopted this requirement and then designated the beneficiaries to whom his property would pass in the event his wife failed to exercise the power in the manner required.

On brief, the parties speculate as to donor's motives in requiring donee to manifest her intent in the manner he prescribed. Appellees say that donor's motive was simply to protect his estate and the natural objects of his bounty against an "inadvertent" exercise of the power by a nonspecific residuary clause. Appellant suggests that donor's motive was to qualify his estate for the tax deduction but, at the same time, to "lay a trap for an unwary donee", hoping that, for want of a "specific reference . . . in her will", donee's attempt to appoint would fail and his estate would pass to beneficiaries of his choice rather than to donee's appointee.

It is not necessary to our decision to guess which of these motives prompted donor. Indeed, one is not exclusive of the other. The requirement imposed is not unlawful; it does not offend public policy; and it does not entail "some additional or other form of execution" within the intendment of Code § 64.1-50. When a donor imposes such a requirement, a donee, who enjoys no title to donor's property, can make no valid appointment affecting that property unless he complies with donor's requirement.

Pursuing his right to dispose of his property as he saw fit, donor created a power of appointment and selected the conduit through which it should pass. Upon the exercise of that power, he imposed a lawful requirement that his donee manifest on the face of her will an intent to exercise the power by making specific reference to the power

created in his will. While donee's will makes general reference to powers of appointment, it makes no specific reference to donor, to his will, or to the power created by his will. We hold that donee's will failed to comply with donor's requirement and, therefore, failed to make an effective appointment of donor's property.

The chancellor's decree is

*Affirmed.*

HARRISON and COCHRAN, JJ., dissenting.

We dissent. It can be safely said that the primary motive of the great majority who avail themselves of the marital deduction is to qualify their estates for the tax deductions and benefits that flow therefrom. However, to reap these benefits, a wife for whom a marital trust is created, must be given a general power of appointment.

The Treasury regulation, which permits a donor to require that a power of appointment must be exercised by specific reference to the power, is not designed to provide the donor with an escape valve, or a technical tool, to deprive the donee of the use of the power. Its purpose is to provide a donor with the means of assuring himself that any power of appointment given will be *consciously* and *knowingly*, not inadvertently, exercised by the donee. That is all that he has a right to expect from or demand of the donee.

Arthur R. Hall created a marital trust and gave his wife, Julia H. Hall, as to the corpus, "a general power of appointment, by specific reference to the powers granted herein, in her will, in favor of her estate, or, at her election in favor of any other party". The husband did not specify the manner in which the specific reference was to be made. However, the will of Julia H. Hall was specific, and in it she made specific reference to the power of appointment she had been given. She devised to her sister, Hazel H. Holzbach, *all* of her estate. She particularized by adding "be it real, personal or mixed, *or in which I may have a power of appointment. . .*". [Emphasis supplied] By the use of this language she made a distinction between her property and the property which she could devise as donee. This wording also indicates a deliberate, conscious and knowing disposition of (1) her own property, and (2) the property over which she had a power of appointment.

All that Arthur R. Hall required of his wife was a "specific reference" in her will to the "powers" which he had granted her by his will, not a reference to his will or any specific clause thereof. What

he granted was a power of appointment, and this is what the wife "had". In Julia H. Hall's will she referred to the power of appointment "I may have". This language constituted a "specific reference" to the powers granted her. It indicated her considered intention to exercise the power.

The only reason for a reference in the wife's will to the power of appointment she had was to manifest her intent to appoint in the manner prescribed by her husband. But for the requirement imposed by his will there would have been no occasion for any reference to the power. *See* Code § 64.1-67.

A power of appointment must be executed in the manner prescribed by the donor. Thus, a power to appoint by will may not be exercised by deed. *Gaskins* v. *Finks,* 90 Va. 384, 19 S.E. 166 (1894); *Hood* v. *Haden,* 82 Va. 588, 592 (1886). Nevertheless, under Code § 64.1-50, a validly executed will exercising a power shall be deemed to be a valid execution of a power of appointment by will, even though the will creating the power may "expressly require" that the will exercising the power "shall be executed with some additional or other form of execution or solemnity". Thus, the donee is not always required to adhere strictly to the donor's directions in exercising a testamentary power of appointment. *See* Powers of Appointment in Virginia, 47 Va. L. Rev. 711, 723 (1961). It is apparent from this statute and from the cases that powers of appointment are favored in Virginia. Where a donee undertakes to exercise a testamentary power of appointment by a validly executed will substantial compliance with the donor's requirements should suffice. Indeed, substantial compliance by deed has been held to be sufficient. *Walke* v. *Moore,* 95 Va. 729, 734, 30 S.E. 374, 375 (1898). To hold that the donor's directions in the present case can only be fulfilled by a detailed reference in the wife's will to the power of appointment created by her husband's will, when she has carefully disposed of all property over which she has a power of appointment, is to adopt an unduly strained, technical and artificial construction.

When Hall elected to establish the marital deduction trust, with its attendant tax benefits, he voluntarily accepted the risk that his wife, as donee of the testamentary power, might appoint beneficiaries other than those preferred by her husband in his will. Aside from tax advantages, the flexibility of a power of appointment makes it especially attractive as a means of meeting unanticipated changes in circumstances. Its use should be encouraged rather than frustrated by rigid

formalism. Here, the intent of the donee to exercise the power of appointment pursuant to the donor's requirements is clear. We would hold that the power was validly exercised and reverse the decree of the trial court.